**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

SAMANTHA J.H.,

        **Plaintiff,**        6:19-CV-6495Sr

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #15.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on February 13, 2015, alleging disability beginning September 24, 2014, at the age of 31, due to a back injury. Dkt. #5, pp.12 & 98.

On March 9, 2018, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Dawn Blythe, at an administrative hearing before Administrative Law Judge ("ALJ"), Connor O'Brien. Dkt. #5, pp.1215-1277. Plaintiff testified that she completed an associate's degree from Genesee Community College

in Criminal Justice and possessed a vocational certification for computer information systems. Dkt. #5, pp.1232-1233. She volunteers to type minutes for the monthly meeting of the area AA groups. Dkt. #5, pp. 1266-1267. She was preparing for bariatric surgery by completing a series of group counseling sessions and attempting smoking cessation. Dkt. #5, pp.1231-32.

Plaintiff lives with her mother, husband and five year-old son. Dkt. #5, pp.1233-34. She testified that she is unable to work because of fatigue and pins and needles going down her legs and up her neck. Dkt. #5, p.1247. Her husband gets their son ready for school and plaintiff walks him to the end of the driveway to get the bus. Dkt. #5, pp.1247-48. She can walk about 40 minutes. Dkt. #5, p.1261. She can stand about 30 minutes and sit about 30 minutes. Dkt. #5, p.1262. After sitting about 20 minutes, her legs go numb and she needs to walk between 20-40 minutes before she can sit again. Dkt. #5, p.1265. Back surgery relieved some of the pain, but her legs still go numb. Dkt. #5, p.1249. The pain interferes with her concentration and causes frustration. Dkt. #5, p.1268. She tires easily and sleeps 4 to 5 hours during the day. Dkt. #5, p.1270.  She is able to bathe herself daily and wash her hair, but needs assistance to put on her pants, socks and shoes. Dkt. #5, p.1258. She can wash a couple of loads of laundry each week, but relies on her mother to wash the remainder of the laundry and to clean. Dkt. #5, p.1259. She has a driver's license, but does not drive more than 25 minutes from her home because she can't sit that long. Dkt. #5, pp.1234-35. Her husband drove her to the hearing; she had to stop twice during the 45 minute drive. Dkt. #5, p.1235.

The VE classified plaintiff's past work as industrial cleaner, which is an unskilled, medium exertion position; collection clerk, which is a skilled, sedentary position; telephone solicitor, which is a semi-skilled, sedentary position; alarm installer, which is a skilled, medium exertion position; and secretary, which is a skilled, sedentary position. Dkt. #5, p.1272. When asked to assume an individual with plaintiff's age, education and past work experience who needed to be able to change position from sit to stand every 45 minutes for up to five minutes and could occasionally stoop, crouch, climb stairs, kneel and crawl, and be exposed to extreme cold, heat, wetness, humidity and airborne irritants, but could not climb a rope, ladder or scaffolding or balance on narrow, slippery or moving surfaces, the VE testified that plaintiff could perform her past work as telephone solicitor and secretary, and could also work as a document preparer, addresser and charge account clerk, each of which were unskilled, sedentary positions. Dkt. #5, p.1273. If she was limited to simple and detailed work, she would still be able to work as a telephone solicitor, document preparer, addresser and charge account clerk. Dkt. #5, p.1274. If she was limited to occasional changes in the work setting and simple work-related decisions, she would still be able to work as a document preparer, addresser and charge account clerk. Dkt. #5, p.1274. If she was off-task up to one-third of the work day or absent two or more days per month, the VE testified that plaintiff would not be able to sustain employment. Dkt. #5, p.1275.

The ALJ rendered a decision that plaintiff was not disabled on September 6, 2018. Dkt. #5, pp.9-23. The Appeals Council denied review on May 3, 2019. Dkt. #5, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 1, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant seeking SSI must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform

-4-

physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of February 13, 2015; (2) plaintiff's degenerative disc disease of the lumbar spine, status post-lumbar disc surgery, history of cervical spine and left ankle surgery, bilateral knee impairment, asthma, obesity, anxiety disorder and history of substance abuse constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work[1] with the following limitations: sit/stand option allowing plaintiff to

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

change positions every 45 minutes for up to 5 minutes, occasional stooping, crouching,

kneeling, crawling, climbing ramps or stairs, exposure to extreme cold and heat,

wetness, humidity and airborne irritants, no climbing of a rope, ladder or scaffold or

balancing on narrow, slippery or moving surfaces and occasional detailed tasks but

otherwise simple tasks; and (5) plaintiff was not capable of performing her past work,

but was capable of working as a document preparer, addresser and account charger,

each of which are unskilled, sedentary exertion positions, and was not, therefore,

disabled within the meaning of the SSA. Dkt. #5, pp.14-23.


    <u>Mental RFC</u>

    Plaintiff argues that the ALJ failed to sufficiently explain his rationale for

incorporating some, but not all, of the limitations identified by the consulting psychiatric

examiner. Dkt. #8-1, pp.11-12. Specifically, plaintiff argues that the ALJ should have

accounted for Dr. Ransom's finding of mild episodic difficulty in relating adequately with

others and appropriately dealing with stress. Dkt. #8-1, pp.11-12.


    The Commissioner responds that the ALJ considered both opinions of

record relating to mental capacity and appropriately restricted plaintiff to simple tasks

and occasional detailed tasks based upon Dr. Ransom's more restrictive assessment of

mild mental limitations due to mild and episodic anxiety disorder. Dkt. #12-1, pp.19-21.


    Christine Ransom, Ph.D. conducted an adult psychiatric evaluation of

plaintiff on October 21, 2015. Dkt. #5, p.330. Plaintiff reported that "at the beginning of

2009 she started to become shaky and have difficulty concentrating when she was under a lot of stress and had too many things to do at once." Dkt. #5, p.330. She indicated that she continues to have this difficulty now and would like to get back into counseling because she thought the coping strategies were helpful. Dkt. #5, p.330. Plaintiff denied depression, generalized anxiety, panic attacks, manic symptoms, thought disorder, cognitive symptoms and deficits. Dkt. #5, p.331. Plaintiff was able to count backwards from 20; do simple calculations and serial threes without error; and remember three out of three objects immediately, five digits forward and three digits backwards. Dkt. #5, p.332. Dr. Ransom estimated plaintiff's intellectual functioning to be average. Dkt. #5, p.332. Dr. Ransom opined that plaintiff would

> show no evidence of difficulty following and understanding simple directions and instructions, perform[ing] simple tasks independently, maintain[ing] attention and concentration for simple tasks, maintain[ing] a simple regular schedule and learn[ing] simple new tasks. She will have mild episodic difficulty performing complex tasks, relat[ing] adequately with others and approriate[ly] deal[ing] with stress due to unspecified anxiety disorder mild and episodic.

Dkt. #5, p.332.


Hillary Tzetzo, M.D., completed a psychiatric review technique on December 3, 2015. Dkt. #5, p.339. Dr. Tzetzo determined that plaintiff would exhibit mild difficulties in maintaining social functioning; concentration, persistence or pace. Dkt. #5, p.350. Dr. Tzetzo opined that plaintiff did not suffer from a severe impairment, psychiatrically speaking, and that she should be able to handle normal work pressures. Dkt. #5, p.351.

The ALJ afforded Dr. Ransom's opinion some weight in light of her specialized understanding of psychiatric disorders and knowledge of the Social Security disability program and because her opinion was generally consistent with the treatment record, which the ALJ noted contained little evidence of sustained treatment for psychiatric symptoms. Dkt. #5, p.21. The ALJ further noted that plaintiff has acknowledged activities that are consistent with the assessment and support limiting plaintiff to simple tasks and only occasionally detailed tasks. Dkt. #5, p.21. The ALJ afforded Dr. Tzetzo's opinion little weight because he did not personally examine plaintiff and because his opinion did not account for plaintiff's subjective allegations. Dkt. #5, p.21.

An ALJ is not required to adopt wholesale the opinion any one medical source, but is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018). Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Moreover, a plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to her application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). While the ALJ is not obligated to explicitly reconcile

-8-

every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support his conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995).

        The ALJ did not commit legal error by failing to specifically account for Dr. Ransom's opinion that plaintiff would experience mild episodic difficulty relating adequately with others and appropriately dealing with stress. Mild limitations do not necessarily require the addition of mental limitations in an RFC. *Lynette W. v. Comm'r of Soc. Sec'y*, 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. March 9, 2021). In *Oliver v. Commissioner of Social Security*, for example, the district court found no inconsistency between a psychiatric opinion of mild difficulties in relating adequately with others and appropriately dealing with stress and the ALJ's determination that such mild limitations did not translate into functional limitations for purposes of plaintiff's RFC. 19-CV-443, 2020 WL 3073342, at *3 (W.D.N.Y.June 10, 2020). In any event, even moderate to marked limitations in an individual's ability to deal with stress can be consistent with a capacity to perform unskilled work. *DelCarmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019). As the ALJ noted, the record is generally devoid of evidence of symptoms or treatment which would warrant additional limitations to plaintiff's mental RFC. Plaintiff declined referral for mental health treatment following her successful completion of a chemical dependency program on October 9, 2015 (Dkt. #5, p.447), and although her treating physician, Dr. Emerson, indicated in a Physical Residual Functional Capacity Questionnaire that anxiety affects plaintiff's physical condition (Dkt. #5, p.1170), and her medical records

occasionally note that she is mildly anxious or reports anxiety (Dkt. #5, pp.383, 473 & 589), plaintiff's medical records consistently note normal mood and affect and that plaintiff was appropriate, pleasant and in no apparent distress.

Physical RFC

Plaintiff argues that the ALJ improperly weighed the opinion of her primary care physician, Dr. Emerson and substituted his own opinion for Dr. Emerson's without citation to conflicting information in the record. Dkt. #8-1, pp.12-15. For example, plaintiff argues that although the ALJ incorporated a sit/stand option into the RFC determination, Dr. Emerson opined that plaintiff would need to change position at will, while the ALJ allowed plaintiff to change position every 45 minutes for 5 minutes. Dkt. #8-1, p.15. Plaintiff also argues that the ALJ improperly rejected Dr. Emerson's opinion that plaintiff would be absent from work 4 days per month and that her ability to perform fine and gross manipulations with her hands was limited. Dkt. #8-1, p.12. Plaintiff questions the ALJ's discussion regarding the signature on this opinion, arguing that the ALJ should have contacted the provider if there was a concern as to who completed the assessment.  Dkt. #8-1, p.14.

The Commissioner responds that the ALJ reasonably weighed the opinion evidence from the consultative examiner, physical therapist and primary care physician in determining plaintiff's RFC. Dkt. #12-1, pp.13-17. Although the ALJ remarked that the signature on Dr. Emerson's questionnaire was illegible, the Commissioner notes that the ALJ thoroughly reviewed the opinion and provided sufficient reasons for discounting certain elements of that opinion. Dkt. #12-1, pp.13-19.

Plaintiff replies that it is unclear whether the ALJ disregarded Dr. Emerson's opinion because the signature was illegible, in which case the ALJ should have recontacted the provider. Dkt. #14, p.2. In any event, plaintiff argues that the ALJ failed to provide good reasons for rejecting portions of that opinion. Dkt. #14, p.3.

The medical record contains an MRI from June 2014 revealing a degenerative disc at L4-L5 with disc space narrowing and a central disc herniation. Dkt. #5, p.169.

Plaintiff presented for physical therapy with Polly Ann Muehlenkamp, D.P.T. on July 9, 2014 for complaints of left buttock, hip and leg pain. Dkt. #5, p.562. Plaintiff reported that she was pushing through the pain to perform her activities of daily living. Dkt. #5, p.562. She was observed to ambulate with an antalgic gait with decreased stance on the left and to have severe limitation with severe increased pain and radicular symptoms with lumbar flexion and extension. Dkt. #5, p.562. She demonstrated decreased strength and function consistent with left lower extremity radiculopathy. Dkt. #5, p.563.

On August 25, 2014, neurosurgeon, Thomas Rodenhouse, M.D. observed mild restriction of spine flexion and extension; no pain with straight leg raising; and no weakness. Dkt. #5, p.571. Plaintiff was encouraged to continue physical therapy. Dkt. #5, p.571.

Plaintiff was discharged from physical therapy for failure to attend on September 8, 2014 after six physical therapy sessions. Dkt. #5, p.565.

Upon consultation with neurosurgeon Howard Silberstein, M.D. on October 23, 2014, plaintiff was observed to have a steady gait and the ability to walk on her tip toes, but had difficulty heel walking with the left foot and missed one step with anterograde tandem walk when bearing weight on the left leg. Dkt. #5, p.172. Dr. Silberman recommended further conservative management in light of plaintiff's young age and the fact that the success rate for treating back pain due to a central disc herniation is not exceedingly high. Dkt. #5, p.172.

On January 15, 2015, plaintiff reported that her pain continued to worsen, but Dr. Silberstein expressed reluctance to recommend surgery given her age and smoking history. Dkt. #5, p.170. He prescribed a brace. Dkt. #5, p.170.

On April 23, 2015, Dr. Silberstein noted that plaintiff continued to have left lateral leg numbness and left dorsi flexor weakness with exquisite tenderness to palpation of her lower back. Dkt. #5, p.169. Given the long standing nature of her pain, which dated back to 2009, Dr. Silberstein opined that plaintiff might not benefit from surgery, but plaintiff decided to proceed. Dkt. #5, p.169.

On July 2, 2015, upon examination two months post L4-L5 laminectomy and discectomy with Wenzel cage fusion, plaintiff reported that her back pain was

manageable and her hip pain and leg numbness had resolved. Dkt. #5, p.168. She also reported that her legs no longer give out on her and that she was walking 2-3 miles per day. Dkt. #5, p.168. Dr. Silberstein observed 5/5 strength bilaterally in her lower extremities with trace deep tendon reflexes bilaterally at the ankle and knees. Dkt. #5, p.168. Her gait was steady. Dkt. #5, p.168.

Rita Figueroa, M.D., conducted a consultative medical examination of plaintiff on October 21, 2015. Dkt. #5, p.334. Dr. Figueroa observed that plaintiff walked with a limp and could not walk on heels or toes and could only squat 25%. Dkt. #5, p.335. She observed full cervical spine flexion and extension and 40 degrees bilateral lateral flexion and lumbar spine flexion of 10 degrees bilaterally with 20 degrees bilateral rotation. Dkt. #5, p.336. Straight Leg Raise was positive on the left. Dkt. #5, p.336. Plaintiff demonstrated 130 degree forward elevation and abduction of the shoulders before stopping due to pain in the lower back. Dkt. #5, p.336. Adduction and internal and external rotation were done fully. Dkt. #5, p.336. She also exhibited full range of motion of elbows, forearms, wrists, hips, and knees bilaterally. Dkt. #5, p.336. The range of motion in plaintiff's right ankle was full, while her left ankle dorsiflexion and plantar flexion was 10 degrees. Dkt. #5, p.336. Deep tendon reflex was decreased in all extremities and the left foot did not feel pinprick sensation, two-point discrimination or proprioception. Dkt. #5, pp.336-337. The upper extremities and right leg demonstrated 5/5 strength, while the left leg was 4/5. Dkt. #5, p.337. Plaintiff's hand and finger dexterity was intact, with 5/5 bilateral grip strength. Dkt. #5, p.337. Dr. Figueroa opined that plaintiff had marked limitation for activities requiring bending, lifting, carrying, pushing and pulling more than 10 pounds. Dkt. #5, p.337.

Plaintiff established a treating relationship with primary care physician Drew Emerson, M.D. on June 1, 2016. Dkt. #5, p.405. On examination, Dr. Emerson noted mild tenderness over the perispinous muscles of the lumbar spine bilaterally; anterior flexion of the back to 70 degrees from vertical and extension to 10 degrees; lateral flexion to 20 degrees and shoulder rotation to 80 degrees bilaterally; no sensory or motor deficits of the lower extremities; brisk, uniform patellar tendon and Achilles tendon reflexes bilaterally; and 5/5 muscle strength in the flexors and extensor of the hips, knees and ankles bilaterally. Dkt. #5, p.406. Dr. Emerson advised plaintiff to avoid stress or strain to the low back. Dkt. #5, p.406.

On July 1, 2016, plaintiff presented with complaints of left knee pain. Dkt. #5, p.403. Dr. Emerson observed mild tenderness along the outer margins of the left patella as well as along the anterior margins of the left knee joint; negative anterior and posterior drawer testing; negative Lachman's test; positive McMurray's test; no sensory or motor deficits of the lower extremities; brisk, uniform patellar tendon and Achilles tendon reflexes bilaterally; and 5/5 muscle strength in the flexors and extensor of the hips, knees and ankles bilaterally. Dkt. #5, p.403. Dr. Emerson advised plaintiff to avoid stress or strain to the left knee while her symptoms persisted. Dkt. #5, p.403. Examination on August 30, 2016 revealed the same findings; Dr. Emerson administered a cortisone shot to the left knee on August 30, 2016. Dkt. #5, p.401.

At her physical on December 2, 2016, Dr. Emerson noted full range of motion of the neck, back, shoulders, elbows, hips and knees without any limitation, dysfunction or discomfort. Dkt. #5, p.398.

On December 13, 2016, plaintiff reported that she gained some meaningful benefit from the cortisone injection and had experienced very little discomfort for about three months, but her symptoms had since returned. Dkt. #5, p.394. Dr. Emerson administered another cortisone injection to plaintiff's left knee. Dkt. #5, p.395.

On July 31, 2017, plaintiff complained of right knee pain, which Dr. Emerson diagnosed as patellofemoral pain syndrome. Dkt. #5, p.390. Dr. Emerson recommended strengthening exercises and avoiding stress or strain to the right knee while symptoms persisted. Dkt. #5, p.390. Plaintiff received a cortisone injection to her right knee on August 11, 2017. Dkt. #5, p.387.

On September 20, 2017, plaintiff reported that her right knee pain had fully resolved and that her left knee pain was intermittent and had flared up last week after she had been on a treadmill. Dkt. #5, p.385. Plaintiff received a cortisone injection to her left knee. Dkt. #5, p.385.

On March 9, 2018, plaintiff brought with her to the administrative hearing a Physical Residual Functional Capacity Questionnaire addressed to Dr. Drew Emerson. Dkt. #5, p.1169 & 1223. The Questionnaire indicates that the author had treated plaintiff since June 1, 2016 and had diagnosed her with chronic low back pain and chronic neck pain. Dkt. #5, p.1169. The Questionnaire noted that plaintiff experienced continuous pain in her low back which worsened with lifting, changes in position, prolong sitting,

standing or walking. Dkt. #5, p.1169. The author opined that emotional factors contribute to the severity of plaintiff's symptoms and functional limitations and that plaintiff's anxiety affected her physical condition. Dkt. #5, p.1170. The author further opined that plaintiff's experience of pain or other symptoms would occasionally interfere with the attention and concentration needed to perform simple work tasks and that plaintiff was only capable of low stress jobs due to her anxiety. Dkt. #5, p.1170. The Questionnaire indicated that plaintiff could sit for 30 minutes at a time and stand for 45 minutes at a time with a total capacity for sitting of 4 hours and a total capacity for standing/walking of at least 6 hours in an 8 hour day. Dkt. #5, p.1170. Plaintiff was capable of lifting and carrying 10 pounds on occasion and could stoop or crouch and occasionally climb stairs. Dkt. #5, p.1171. She could grasp, turn and twist objects with her hands and engage in fine manipulation of her fingers 30% of an 8 hour day and could reach overhead 15% of an 8 hour day. Dkt. #5, p.1172. On average, plaintiff was expected to be absent more than 4 days per month as a result of her impairments or treatment. Dkt. #5, p.1172. The illegible signature concludes with "MD" and  does not include a printed name below the signature line, but does include Dr. Emerson's practice name and address. Dkt. #5, p.1172. It is dated March 7, 2018. Dkt. #5, p.1172.

The ALJ addressed the Questionnaire as follows:

Finally, in a medical source statement dated March 2018, a physician whose signature is illegible, opined, *inter alia*, that the claimant is limited to sitting four hours, but can stand and walk at least six hours, in an eight-hour day. This physician also noted that the claimant can occasionally lift and carry up to 10 pounds, but has significant limitations using the upper extremities to perform fine and gross manipulations. He/she also noted that the claimant requires a 15-minute

break every hour and would miss work more than four days per month due to her impairments and the need for ongoing treatment. Furthermore, this doctor opined that the claimant is limited [to] performing low stress jobs due to her history of anxiety. However, this opinion is not fully consistent with the medical record as a whole. For instance, there is little evidence demonstrating that the claimant has significant limitations performing fine and gross manipulations with the upper extremities. Moreover, this physician's finding that the claimant would miss work more than four days of work per month is highly conjectural and appears to place excessive reliance on the claimant's subjective allegations. Nevertheless, the remainder of this opinion is generally consistent with the record as a whole, particularly as it pertains [to] the claimant's ability to lift and carry weight, and will therefore . . . be given some weight. The statement is not persuasive due to the lack of signature, but does not create conflict with the overall record, except in the areas where this statement is unsupported by the evidence.

Dkt. #5, pp.21-22.


An ALJ is required to consider and evaluate every medical opinion received, regardless of its source. 20 C.F.R. § 416.927(c). Generally speaking, the ALJ will afford more weight to the opinion of a treating physician because he or she is most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. *Moscatello v. Saul*, 18-CV-1395, 2019 WL 4673432, at *11 (S.D.N.Y.Sept. 25, 2019), *citing* 20 C.F.R. § 416.927(c)(2). Thus, where the treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be afforded controlling weight. *White v. Saul*, 414 F. Supp.3d 377, 383

(W.D.N.Y. 2019), quoting 20 C.F.R. § 404.1527(c)(2). The ALJ may afford less than controlling weight to a treating physician's opinion if it fails to meet this standard, but is required to provide good reasons for the weight assigned upon consideration of, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015).

The opinion of a treating physician is not entitled to controlling weight if it contains internal inconsistencies or contradicts the treating physician's treatment notes. *Monroe v. Cimm'r of Soc. Sec.*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Moreover, the opinion of a treating physician need not be given controlling weight if it is not consistent with other substantial evidence in the record, including the opinions of other medical experts, such as a consulting physician. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004); *See Baszto v. Astrue*, 700 F. Supp.2d 242, 249 (N.D.N.Y. 2010) (ALJ may rely upon the opinion of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that the first factor is replaced with consideration of whether the non-treating source examined the plaintiff. *White*, 414 F. Supp.3d at 383. If the ALJ fails to provide a sufficient basis for discrediting the opinion of a treating physician, remand is required. *Greek*, 802 F.3d at 375.

To the extent that the ALJ questioned the identity of the physician signing the Physical Residual Function Capacity Questionnaire, it was the ALJ's responsibility to verify the signature with Dr. Emerson. *See, e.g., Drogo v. Colvin*, 5:13-CV-946, 2015 WL 4041732, at *8 (N.D.N.Y. July 1, 2015) (ALJ improperly used an illegible signature as means to discredit treating source opinion when the signature was reasonably interpreted from the treatment records). Thus, it was error for the ALJ to determine that the Physical Residual Function Capacity Questionnaire was "not persuasive due to the lack of signature" without at least attempting to ascertain whether the author was, in fact, plaintiff's treating physician, Dr. Emerson. Dkt. #5, p.21. However, an error in application of the treating physician rule is harmless if "application of the correct legal standard could lead to only one conclusion. *Price v. Comm'r of Soc. Sec'y*, 14-CV-9164, 2016 WL1271501, at *4 (S.D.N.Y. March 31, 2016), *quoting Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

The ALJ analyzed the opinion as a medical source statement from an unidentified treating physician and afforded it some weight, but determined that elements of the opinion were unsupported by and inconsistent with the medical record as a whole. Dkt. #5, pp.10-11. In reaching this conclusion, the ALJ reviewed the medical evidence from plaintiff's treating neurosurgeon, Dr. Silberstein; plaintiff's primary care provider, Dr. Emerson; and plaintiff's physical therapist, Polly Mehelnkamp, as well as the opinion evidence from the consulting examiner, Dr. Figueroa, and appropriately considered that evidence in relation to the opinion contained within the Questionnaire. The ALJ's determination that the more restrictive

-19-

aspects of the opinions contained within the Questionnaire were contradicted by those other sources of evidence and that the overall record warranted a determination that plaintiff is capable of sedentary work, with a sit/stand option allowing her to change positions every 45 minutes for up to 5 minutes and no more than occasional stooping, crouching, kneeling, crawling, and climbing of ramps or stairs, is supported by substantial evidence within the overall record. As a result, the Court determines that the discussion regarding the identity of the author of the Questionnaire constitutes harmless error.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #12), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
               **March 19, 2021**

                                    **s/ H. Kenneth Schroeder, Jr.**
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

-20-